**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JESUS HERNANDEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 10-cv-534-GKF-TLW |
| | ) | |
| JUSTIN JONES, Director of the | ) | |
| Oklahoma Department of Corrections, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This matter comes before the court on Petitioner's 28 U.S.C. § 2254 Petition for Writ of

Habeas Corpus (Doc. #1) ("Petition"), Petitioner's Motion to Amend (Doc. #35), and Petitioner's

Motion for Hearing (Doc. #38). Respondent filed a response to the Petition (Doc. #12), and

provided the state court records necessary to resolve Petitioner's claims (Doc. ##12, 14, 15).

Petitioner replied. (Doc. #25). As Mr. Hernandez proceeds *pro se*, the court construes his

pleadings liberally. *See United States v. Guerrero*, 488 F.3d 1313, 1316 (10th Cir. 2007).

### I.   Background

Pursuant to 28 U.S.C. § 2254(e)(1), factual determinations made by a state court are

presumed correct, and the Petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence. Here, the Petitioner has not rebutted the presumption of

correctness of the factual background provided by the Oklahoma Court of Criminal Appeals

(OCCA):

> Appellant Jesus Francisco Hernandez was tried by jury for two counts of First
> Degree Murder (21 O.S. Supp. 2006, § 701.1), Case No. CF-2007-281, in the
> District Court of Tulsa County. In Count I, the jury returned a verdict of guilty as
> charged and recommend as punishment life imprisonment without the possibility
> of parole. In Count II, the jury returned a verdict of guilt for the lesser charge of

Second Degree Murder and recommended as punishment thirty (30) years imprisonment. The trial court sentenced accordingly, ordering the sentences to be served consecutively. It is from this judgment and sentence that Appellant appeals.

Aletheia Kikugawa and Appellant lived together in the Colonial Park Apartments in Tulsa, Oklahoma. Ms. Kikugawa and Appellant had a tumultuous relationship and Appellant admittedly beat Aletheia. Friends and relatives of Ms. Kikugawa had heard the couple arguing many times.

On January 9, 2007, Aletheia's ex-husband, Tad Kikugawa, went to pick her up to take her to a doctor's appointment. Aletheia was pregnant with Appellant's child. She had previously told her ex-husband that she was scared to tell Appellant about the baby and said, "if I should die, I'll die at the hands of Jesus." She eventually told Appellant about the baby, but he "had no reaction, no excitement." Appellant had refused to take her to the doctor.

When Mr. Kikugawa arrived at the apartment, he knocked on the door, but received no response. After waiting a few minutes, he opened the door and found Aletheia lifeless on the floor. She had been stabbed multiple times. Mr. Kikugawa borrowed a neighbor's phone to call 911.

When the police arrived, Mr. Kikugawa gave them a description of Appellant and told them Aletheia's car was missing. At approximately 11:40 a.m. that morning, police observed Appellant in Aletheia's car. Appellant was taken into custody. When asked his name and address, Appellant replied, "I don't live anywhere now." There were dark red stains on Appellant's jeans and shoes and scratch marks on the right side of his face. A bloody shirt was found in his closet.

In his statement to police, Appellant said that on January 9, 2007, Mr. Kikugawa had brought Aletheia home and he and Aletheia remained home alone. He denied that he and Aletheia fought, explaining that the television was loud. Appellant said he left the apartment in Aletheia's car and while in the car he heard noises that sounded like thunder. He said he returned to the apartment to find Aletheia dead on the floor. Appellant said he kneeled beside her and asked her what was happening. When he received no response, he left for the Quik Trip where he purchased beer. Appellant explained he did not call the police because he did not believe it was really happening.

An autopsy revealed that Ms. Kikugawa suffered 10 stab wounds to the front and back of her chest and neck. She also had wounds to her hands that appeared to be defensive wounds. Her cause of death was attributed to the stab wounds. The autopsy also revealed that she was fifteen weeks pregnant and the cause of death of the child was due to the death of the mother. DNA testing on Appellant's shoes and shirt showed that Ms. Kikugawa could not be excluded as the donor of the blood.

*Hernandez v. State*, Case No. F-2008-650 (Okla. Crim. App. May 22, 2009) (Doc. #12-4 at 1-2) (*Hernandez I*).

**Trial.** On June 6, 2008, a Tulsa County District Court jury found Mexican national Jesus Hernandez guilty of murdering Ms. Kikugama and their unborn child. The state judge adopted the jury's recommended sentence: life imprisonment without the possibility of parole for the First Degree murder of Ms. Kikugama and 30 years imprisonment for the Second Degree murder of the unborn child.

**Direct Appeal.** The OCCA affirmed the conviction on appeal. There, Mr. Hernandez raised two propositions of error:

(1) The Trial Court Erred in Admitting Prejudicial and Cumulative Photographs of the Crime Scene;

(2) The Trial Court Erred in Punishing Appellant Under More Than One Section of the Law for a Single Act.

App. Br. in *Hernandez I* (Okla. Crim. App. Jan. 22, 2009) (Doc. #12-1). The OCCA found the videotape was "neither cumulative nor prejudicial." *Hernandez I* (Okla. Crim. App. May 22, 2009) (Doc. #12-4 at 4). And the OCCA held that Aletheia Kikugama and the unborn child were "separate and distinct persons," and thus Mr. Hernandez was not punished twice for the same offense. *Id.* at 5.

**Application for Post-Conviction Relief.** Mr. Hernandez next filed an Application for Post-Conviction Relief in Tulsa County District Court. *See* Case No. CF-2007-281. In that Application, Mr. Hernandez asserted two claims:

(1) "Ineffective assistance of both trial and Appellate Counsel";

(2) "With held [sic] interpreter in appeal process and late during trial."

Order Denying Pet.'s Application for Post-Conviction Relief in Case No. CF-2007-281 (Tulsa County District Court May 12, 2010) (Doc. #12-5 at 2-3). That court found Mr. Hernandez's

"trial counsel acted as a reasonable competent attorney under the facts and circumstances of this case." *Id.* at 4. That court also found Mr. Hernandez's "appellate counsel carefully selected legal issues to be raised on appeal" and "was reasonably competent." *Id.* Additionally, the court found that any alleged errors would not have changed the outcome of the trial or appeal. *Id.*

The court interpreted Mr. Hernandez's second argument as a claim that appellate counsel was ineffective for not providing an interpreter in his direct appeal. *Id.* at 5. And the court held that Mr. Hernandez failed to prove the outcome of the case would have been different if he had been provided an interpreter on appeal. *Id.* at 5-6.

**Appeal of Order Denying Application for Post-Conviction Relief.** Mr. Hernandez appealed the denial of his Application of Post-Conviction Relief *pro se*. The OCCA affirmed, stating that Mr. Hernandez had not established "why or how the outcome of his appeal would have or should have been different," and that he had not established factual innocence. *Hernandez v. State*, Case No. PC-2010-511 (Okla. Crim. App. Aug. 3, 2010) (Doc. #12-7 at 2) (*Hernandez II*).

**Petition for Writ of Habeas Corpus.** Mr. Hernandez timely filed his Petition, and properly exhausted his state court remedies prior to filing his Petition. *See* Doc. #12 at 3 ¶¶6, 7. Mr. Hernandez raises the four grounds he previously raised in other post-trial venues:

    (1) The trial court erred in admitting prejudicial and cumulative photographs of the crime scene;

    (2) The trial court erred in punishing appellant under more than one section of the law for single act;

    (3) Ineffective assistance of both trial and appellate counsel;

    (4) "With held [sic] interpreter in appeal process and late during trial."

Petition (Doc. #1). In his reply, Mr. Hernandez requests an evidentiary hearing to establish that his counsel on direct appeal made no attempt to contact him by letter, phone, or visits, and

provided no translator. Additionally, Mr. Hernandez raises for the first time that his counsel failed to advise him that under the Vienna Convention he could have contacted the Mexican Consulate for assistance and that the outcome could have been different if he had contacted the Mexican Consulate.

Mr. Hernandez also seeks to amend his Petition in three ways: (1) to substitute the State of Oklahoma as the party respondent; (2) to supplement his second ground with an argument that federal law prohibits "pyramiding of sentencing" when two crimes arise out of a single action; and (3) to supplement his third ground with an argument that counsel failed to ensure Mr. Hernandez understood enough English to effectively aid his own defense. (Doc. #35). Finally, Mr. Hernandez moves for a hearing on the Petition. (Doc. #38).

## II.    Motion to Amend

The motion to amend requests the court change the respondent from Oklahoma Department of Corrections to "State of Oklahoma." (Doc. #35). The court previously dismissed the Oklahoma Department of Corrections and added the proper party respondent – Justin Jones, Director of the Oklahoma Department of Corrections. (*See* Order at Doc. #13). This portion of the motion to amend is therefore denied.

 Consideration of the two other proposed amendments is governed by Fed. R. Civ. P. 15(c) (providing conditions determining whether an amended pleading relates back to the date of the original pleading).

### A.  Petitioner's New Claims Do Not Relate Back To The Original Petition.

An untimely amendment to a § 2254 motion which, "'by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion *if and only if* the original motion was timely filed and *the proposed amendment does not seek to add a new claim or to insert a new theory into the case.*'"

*Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (quoting *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000)).

Petitioner's "illegal pyramiding of sentencing" argument states that federal law prohibits two separate murder sentences running consecutively where the crime "arose out of a single action." (Doc. #35). The court construes this as an attempt to raise a federal Double Jeopardy Clause claim. *See* U.S. CONST. amend. V. Petitioner did not raise this claim in his Petition. His Petition raised a state law claim that he could not be "punished twice" for killing a pregnant woman and her unborn child, and the Petition stated he had raised the issue in his direct appeal. In his direct appeal, he argued that 21 Okla. Stat. § 11 prohibited prosecution for more than one crime if the two criminal statutory provisions cover the same act. App. Br. in *Hernandez I* (Okla. Crim. App. Jan. 22, 2009) (Doc. #12-1 at 5-6). Thus, the Petition includes only his state law claim. A federal Double Jeopardy claim is not the same as a claim alleging violation of a state statute prohibiting multiple punishment. Petitioner did not raise, and the OCCA did not address, a Double Jeopardy Clause claim. Petitioner could have raised the federal "illegal pyramiding" argument in his Petition in addition to renewing his state law claim. He did not do so. The federal "illegal pyramiding" claim is new and does not relate back to the original Petition.

Petitioner's new argument on his ineffective assistance of counsel claim states that his counsel did not ensure he "understood enough of the English language to effectively aid in his own defense and understand the proceedings against him." (Doc. #35). The Petition already includes an argument that appellate counsel failed to provide a translator or communicate with Petitioner effectively concerning his defense. (Doc. #1 at 7-8) (appellate counsel "never communicated with me, asked my input or attempted to help me understand my constitutional rights"). Thus, the court interprets the motion to amend to assert a claim that trial counsel also

failed to ensure Petitioner understood the ongoing proceedings. As such, this is a new argument that does not relate back to the original Petition.

### B.  Petitioner's New Claims Are Time-Barred.

Pursuant to 28 U.S.C. § 2244(d)(1)(A), a habeas corpus petition must be filed within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In this case, Respondent concedes that Mr. Hernandez timely filed his original Petition. (Doc. #12 at 3 ¶6). His motion to amend, however, was not filed until more than two years after filing the original Petition, well after the one-year limitations period expired. As to Mr. Hernandez's new claims that do not relate back, the court finds that, unless Mr. Hernandez is entitled to tolling of the limitations period, to allow amendment in this case by adding new claims would frustrate the intent of Congress in enacting the statute of limitation provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).

The court finds no statutory or equitable basis for tolling the limitations period for his new claims. First, the pendency of the instant federal case does not serve to toll the federal limitations period under 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167 (2001) (holding that a federal habeas petition is not an "application for State post-conviction or other collateral review" within the meaning of § 2244(d)(2)). Second, although the statute of limitations contained in § 2244(d) may be subject to equitable tolling where extraordinary circumstances beyond the prisoner's control prevent a petitioner from timely filing his petition, *see Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998), nothing in the record suggests that Mr. Hernandez is entitled to equitable tolling.

Mr. Hernandez's request to amend his petition (Doc. #35) is denied. The court will consider the claims identified in the petition. (Doc. #1).

III.    **Motion for Hearing**

The court denies Mr. Hernandez's motion for a hearing (Doc. #38) as no hearing is necessary to decide the issues before the court.

IV.    **The Petition**

As previously stated, Mr. Hernandez raises four grounds in his Petition: (1) the trial court erred in admitting prejudicial and cumulative photographs and video of the crime scene; (2) the trial court erred in punishing a single act twice under Oklahoma law; (3) ineffective assistance of both trial and appellate counsel; and (4) "[w]ith held [sic] interpreter in appeal process and late during trial."

**A.  Exhaustion**

Preliminarily, the court must determine whether Petitioner has exhausted available state court remedies as required by 28 U.S.C. § 2254(b) and (c). *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). Mr. Hernandez raised the first two claims on direct appeal and the remaining two claims on post-conviction appeal. Thus, the exhaustion requirement is satisfied.

**B.  Claims Adjudicated By OCCA**

The AEDPA provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402 (2000). When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v.*

*Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated grounds 1 and 2 on direct appeal and Petitioner's claim of ineffective assistance of appellate counsel on post-conviction appeal. These claims will therefore be reviewed pursuant to § 2254(d)'s standard.

*1) Crime Scene Photo and Video Evidence*

Federal habeas review is restricted "to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The crime scene evidence is an issue of state evidentiary law, and thus federal habeas review is only available if the state law error is so egregious to result in a fundamentally unfair trial. *Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) ("The question presented in these habeas proceedings, however, is not whether this evidence was admissible under state law, but instead whether, considered in light of the entire record, its admission resulted in a fundamentally unfair trial.").

The OCCA held the evidence was not cumulative nor prejudicial:

The videotape accurately depicted the location of Ms. Kikugawa's body in the apartment and gave the jury a view of the entire crime scene, including the blood spatter and pooling of blood in relation to her body. The videotape corroborated the testimony of Mr. Kikugawa, Detective Regalado, and Dr. Distefano. Contrary to Appellant's argument, the videotape does not focus on Ms. Kikugawa's body for an inordinate amount of time. Rather, the videotape provided the jury with a walk through perspective of the crime scene left by Appellant, a visualization not provided by the still photographs. The State is entitled to corroborate and illustrate the testimony of its witnesses about what the crime scene looked like and the manner of death. *Pavatt v. State,* 2007 OK CR 19, ¶55, 159 P.3d 272, 290. Further, the State is not required to downplay the violence involved or its repercussions. *Warner v. State,* 2006 OK CR 40, ¶168, 144 P.3d 838, 887. Although photographs of Ms. Kikugawa's body and the crime scene were also

admitted, Appellant has failed to meet his burden of showing any repetition or duplication was needless or inflammatory. *Id.* Accordingly, we find the trial court did not abuse its discretion in admitting the videotape of the crime scene. This proposition of error is denied.

Based on the OCCA's description of the video and photos, the admission of these pieces of evidence did not result in a fundamentally unfair trial. The Petitioner's first proposition of error is without merit.

### 2)   *Punishment For Two Murders Based on One Act*

Mr. Hernandez's argument on direct appeal was that separate punishments for the murders of Ms. Kikugama and the unborn child violated 21 Okla. Stat. § 11. App. Br. in *Hernandez I* (Okla. Crim. App. Jan. 22, 2009) (Doc. #12-1 at 5-7). The OCCA rejected this state law claim:

> In Count I, Appellant was charged with First Degree Murder for willfully and intentionally causing the death of Aletheia Kikugama. In Count II, Appellant was charged with First Degree Murder for causing the death of the unborn child carried by Kikugawa. It is well established that where crimes against the person are involved, even though various acts are part of the same transaction, they will constitute separate and distinct crimes where they are directed at separate and distinct persons. *Burleson v. Saffle*, 2002 OK CR 15, ¶ 5, 46 P.3d 150, 152; *Clay v. State,* 1979 OK CR 26, ¶ 6, 593 P.2d 509, 510; *Jennings v. State,* 1973 OK CR 74, ¶ 15, 506 P.2d at 935. Therefore, as two separate victims were involved in this case, there is no double punishment claim. This conclusion is not altered by the fact that Appellant was ultimately convicted of the lesser offense of Second Degree Murder in Count II. The jury held him responsible for the deaths of two people and our state statutes allow him to be punished for each crime. As Appellant has not been punished twice for the same offense, this proposition of error is denied.

*Hernandez I* (Okla. Crim. App. May 22, 2009) (Doc. #12-4 at 5). Federal courts on habeas review of prescriptions against cumulative punishments for a single act are "'bound by a state court's determination of the legislature's intent.'" *Cummings v. Evans*, 161 F.3d 610, 615 (10th Cir. 1998) (quoting *Birr v. Shillinger,* 894 F.2d 1160, 1161 (10th Cir. 1990)). Here, the OCCA, the highest Oklahoma court on criminal matters, rejected Mr. Hernandez's argument and held

that the state legislature intended for a murder of a woman and her unborn child to be punished cumulatively. *Hernandez I* (Okla. Crim. App. May 22, 2009) (Doc. #12-4 at 5). This court must defer to the OCCA on the issue. Petitioner's second proposition of error is without merit.

### 3) *Ineffective Assistance of Appellate Counsel*

As part of his third and fourth propositions of error, Petitioner claims that appellate counsel provided ineffective assistance. On post-conviction appeal, Petitioner argued that state witnesses' testimonies contradicted each other without challenge or cross examination by trial or appellate counsel, which "allowed" the state to "paint a portrait of me as an abusive boyfriend with bad motives to kill my girlfriend who I've [sic] living with for two years." App. Br. In *Hernandez II* (Okla. Crim. App. May 18, 2010) (Doc. #12-6 at 5). Additionally, Petitioner claims the lack of an interpreter during part of the trial and during the direct appeal made it impossible for him to understand his constitutional rights. Petition (Doc. #1 at 9). The OCCA rejected these claim, finding as follows:

> To establish a claim of ineffective appellate counsel, Petitioner must show that counsel's performance was deficient under prevailing professional norms and that but for the deficient performance the outcome of his appeal would have been different, or he must establish factual innocence. *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674, 693, 698. Petitioner hasn't established why or how the outcome of his appeal would have or should have been different, and he hasn't established factual innocence. *Id.*

*Hernandez II* (Okla. Crim. App. Aug. 3, 2010) (Doc. #12-7 at 2). In Mr. Hernandez's reply, he argues that his counsel failed to inform him that under the 1963 Vienna Convention on Consular Relations and as a Mexican national he could contact the Mexican Consulate for assistance.

To be entitled to habeas corpus relief on his claim of ineffective assistance of appellate counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must show that his counsel's performance was deficient and that the deficient

performance was prejudicial. *Strickland*, 466 U.S. at 687; *Osborn v. Shillinger*, 997 F.2d 1324, 1328 (10th Cir. 1993); *see also United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) ("we have applied those same standards in assessing the effectiveness of appellate counsel"), *abrogated on other grounds by Neill v. Gibson*, 278 F.3d 1044 (10th Cir. 2001). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. *Strickland*, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 688. In making this determination, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999). This court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under *Strickland* and through the "deferential" lens of § 2254(d)).

Mr. Hernandez provides no reason to find the OCCA's application of *Strickland* was unreasonable. The Tulsa County District Court Order Denying Petitioner's Application for Post-Conviction Relief treated his argument that an interpreter was not provided during his appeal as an ineffective assistance of counsel claim. *Hernandez v. Oklahoma*, Case No. CF-2007-281 (Tulsa County Dist. Ct. May 12, 2010) (Doc. #12-5 at 5). That court found Mr. Hernandez did not show how an interpreter would have changed the outcome of the appeal. The OCCA affirmed on the same grounds. *Hernandez II* (Okla. Crim. App. Aug. 3, 2010) (Doc. #12-7 at 2). Nothing in the record suggests that decision was unreasonable.[1]

In sum, Mr. Hernandez provides no reason to find the OCCA's decision concerning appellate counsel was unreasonable or "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *see Hernandez II* (Okla. Crim. App. Aug. 3, 2010) (Doc. #12-7 at 2) ("Petitioner hasn't established why or how the outcome of his appeal would have or should have been different, and

---

[1] Respondent takes the position that the OCCA erred in its Order Affirming Denial of Application for Post-Conviction Relief when "the OCCA found the Petitioner's interpreter claim to be procedurally defaulted." *See* Doc. #12 at 12. Because Hernandez could not have asserted he was denied an interpreter on direct appeal in the direct appeal itself. However, a closer look at the Order, together with the state court's underlying decision reveals otherwise. The OCCA held that, "[w]ith the exception of a claim of ineffective appellate counsel, Petitioner has not raised any issue that either was not or could not have been asserted during his trial or in his direct appeal." *Hernandez II* (Okla. Crim. App. Aug. 3, 2010) (Doc. #12-7 at 1). The district court treated the lack of interpreter claim as part of the ineffective assistance of counsel claim. The OCCA affirmed the lower court's finding that counsel on direct appeal had not been ineffective, including in not obtaining an interpreter.

Even if the OCCA Order is read to have held the argument concerning a lack of an interpreter on direct appeal was waived, Petitioner's argument is without merit. First, the Court Interpreters Act applies only to federal trials. 28 U.S.C. §1827(a). Second, there is no evidence Petitioner requested an interpreter during his direct appeal. Thus, even under *de novo* review, the court would find the lack of an appellate interpreter was not "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

he hasn't established factual innocence."); *Hernandez v. Oklahoma*, Case No. CF-2007-281 (Tulsa County Dist. Ct. May 12, 2010) (Doc. #12-5 at 3-4) ("Petitioner's allegation(s) of error fail to establish that the results of petitioner's direct appeal or the jury verdict of guilty beyond a reasonable doubt would have changed.").

Mr. Hernandez's claims of ineffective assistance of appellate counsel are without merit. Therefore, the court denies the Petition for Writ of Habeas Corpus. (Doc. #1).

### C.  Claims Which Are Procedurally Barred

#### 1) *Ineffective Assistance of Trial Counsel*

Respondent argues that Petitioner's ineffective assistance of trial counsel claim is procedurally barred from this court's review as a result of Petitioner's failure to raise the claim on direct appeal. (Doc. #12 at 15-17). Respondent is correct. In his direct appeal, Mr. Hernandez did not raise a claim of ineffective assistance of trial counsel. Mr. Hernandez's appellate counsel was a different attorney than his trial counsel. In his direct appeal, Mr. Hernandez did not claim that his trial counsel failed to procure an interpreter for all or part of the trial. Under federal law, claims which were not raised in state court are generally barred from federal habeas review:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Mr. Hernandez did not attempt to and has not shown any of the exceptions to this general rule apply.

Additionally, trial counsel acted reasonably and well within the bounds of *Strickland*. Trial court records confirm that the district court provided a translator throughout pretrial and trial proceedings. *See* Doc. ##15-1 at 1, 3-4; 15-2 at 1, 13 (noting translator "is present again

today throughout the week"), 15-3 at 1; 15-4 at 1; 15-5 at 1, 7 ("As stated previously, the interpreter has been here throughout every court proceeding. He continues to be here today."). And as the Tulsa County District Court found in its Order Denying Petitioner's Application for Post-Conviction Relief, "trial counsel acted as a reasonable competent attorney under the facts and circumstances of this case. The witnesses were effectively cross-examined by Petitioner's trial attorney." *Hernandez v. Oklahoma*, Case No. CF-2007-281 (Tulsa County Dist. Ct. May 12, 2010) (Doc. #12-5 at 4). Even if he had not waived the argument, Mr. Hernandez provides no evidence to contradict these findings.

### 2) *Vienna Convention on Consular Relations*

Mr. Hernandez did not raise his Vienna Convention argument on direct appeal or in his Application for Post-Conviction Relief. Further; he did not raise the argument in his Petition; and thus, Respondent has not had an opportunity to respond. "[C]laims under Article 36 of the Vienna Convention may be subjected to the same procedural default rules that apply generally to other federal-law claims." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 360 (2006). Insofar as Mr. Hernandez did not raise the argument until he filed his reply in this proceeding, he has waived the argument. *See Threat v. Laymon*, 311 F. App'x 132, 134 (10th Cir. 2009) ("to the extent [Petitioner's] reply raised a new claim…, the claim was waived because he had not included it in his habeas petition or attempted to amend the petition to do so").

Additionally, Petitioner's Vienna Convention argument is subject to an anticipatory procedural bar. An "'[a]nticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (quoting *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002)). If Petitioner were to return to state court to present the defaulted claim, the OCCA would impose a

procedural bar based on independent and adequate state procedural grounds. *See Threat*, 311 F. App'x at 135 ("Oklahoma's rule barring post-conviction relief for claims that could have been raised on direct appeal constitutes an independent and adequate state ground barring habeas review.").[2] Thus, Petitioner's argument can only be considered here if Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner shows neither an adequate cause for the default nor actual prejudice as a result. Additionally, Petitioner does not demonstrate actual innocence, which is required to meet the fundamental miscarriage of justice standard. *See McCleskey v.  Zant*, 499 U.S. 467, 494 (1991) ("extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime"). Therefore, Petitioner has failed to demonstrate that he falls within either exception to the doctrine of procedural bar.

---

[2] Additionally, if Mr. Hernandez had raised the argument before the state courts, his vague allegation that "things could have been different" would be insufficient to show ineffective assistance of counsel for not informing him about the Vienna Convention. A federal district court described a similar situation in *Guevara v. Miller*, 2011 WL 7143477 (W.D. Okla. Dec. 30, 2011), *report and recommendation adopted*, 2012 WL 359837 (W.D. Okla. Feb. 2, 2012):

> The OCCA has held as a matter of state law that individual rights are conferred by the Vienna Convention. *See Torres v. State,* 120 P.3d 1184, 1186 (Okla. Crim. App. 2005). The OCCA has also held, however, that to prevail on such a claim, the defendant must make a threshold showing of how his consulate would have aided him during the trial. *Id.* at 1186–1187. Petitioner has not attempted to make such a showing and, therefore, he has failed to demonstrate that his trial counsel was ineffective in failing to inform him of his right or that his appellate counsel was ineffective in failing to raise this issue on direct appeal. Petitioner has not shown that the OCCA's decision regarding this claim was either contrary to, or an unreasonable application of Supreme Court law.

In the instant case, Mr. Hernandez has not attempted to make a showing how the consulate would have aided him at trial.

**V.    Certificate of appealability**

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this court's application of deference to the decision by the OCCA was debatable among jurists of reason. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the court's ruling resulting in the denial of the petition on procedural grounds was debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

VI.     **Conclusion**

WHEREFORE, the Motion To Amend is denied (Doc. #35), the Motion For Hearing is denied (Doc. #38), and the Petition for Writ of Habeas Corpus is denied (Doc. #1). Moreover, the court denies a certificate of appealability.

DATED this 1st day of August, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT